## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**INLAND FRESH SEAFOOD**             **CIVIL ACTION**
**CORPORATION OF AMERICA, INC.**

**VERSUS**                              **NO. 23-2108**

**TRAVELERS PROPERTY CASUALTY**     **SECTION "O"**
**COMPANY OF AMERICA**

## ORDER AND REASONS

Before the Court in this insurance coverage case are the cross-motions[1] for partial summary judgment of Plaintiff Inland Fresh Seafood Corporation of America, Inc. ("Inland") and Defendant Travelers Property Casualty Company of America ("Travelers") on Inland's Extended Business Income claim. For the following reasons, both motions are **DENIED.** Travelers submits an additional motion for summary judgment seeking dismissal of Inland's second cause of action alleging Title 22 bad faith pursuant to La. Rev. Stat. §§ 22:1973 and 1892. For the following reasons, that motion is **GRANTED in part and DENIED in part.**

### I.    BACKGROUND

Inland is a seafood wholesaler that operates a regional facility in New Orleans, Louisiana. Travelers is an insurance company that sold Inland an all risk property insurance policy with a policy period of August 8, 2021 to August 8, 2022 (the "Policy").[2] The Policy covered Inland's facility located at 2527 Perdido St. (the

---

[1] ECF Nos. 35 and 39.
[2] ECF No. 39-2 (Certified Policy).

"Perdido Property").[3] The Perdido Property was 12,687 square feet and included a room to cut fish, a lobster tank, cold storage spaces (including refrigeration and freezer), forklifts, and a loading dock.[4]

## A. Hurricane Ida Damages Inland's Perdido Property

Hurricane Ida struck the New Orleans area on August 29, 2021, and damaged Inland's Perdido Property.[5] Inland's operations were entirely suspended from August 29, 2021, until September 5, 2021.[6]

Inland partially resumed operations on September 6, 2021. During that time, Inland was working out of a temporary location in Independence, Louisiana.[7] Inland operated out of that location until November 6, 2021.[8] Inland shared the property with a shrimp processing company that was operating out of the same facility, which required sharing freezer space, the loading dock, and the forklifts. Due to inadequate freezer space, Inland also needed to lease additional refrigerated trailers for its products.[9]

In November 2021, Inland moved to another temporary location in Chalmette, Louisiana.[10] At this property, too, Inland needed to lease supplemental refrigerated trailers and freezers to store its seafood.[11] Inland remained at this second temporary

---

[3] *Id.* at 10.
[4] ECF No. 43-5 ¶ 3 (Comeaux Decl.).
[5] *Id.* ¶ 4.
[6] *Id.* ¶ 5.
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.* ¶ 6.
[11] ECF No. 42-4 (Jones Depo. at 70:1-24).

location until January 2023.[12] Throughout its time in the temporary facilities, Inland struggled to maintain the quality of its products for its customers.[13] Some customers switched to other distributors.[14]

On January 15, 2023, Inland moved into its post-storm permanent location at 134 Brookhollow Esplanade in Harahan, Louisiana (the "Brookhollow Property").[15] The Brookhollow Property was of a similar size and quality to the original Perdido Property.[16] The new property was also capable of handling the same volume and quality of operations that the Perdido Property had been handling before it was damaged by Hurricane Ida.[17] Despite resuming operations in January 2023 at the new, permanent location, however, Inland struggled to immediately resume the same level of business activity it had sustained before the hurricane. It experienced slower sales from customers, many of whom had reduced their orders from Inland while it was operating out of the temporary locations.[18]

### B. Inland's Policy with Travelers

Inland's insurance Policy with Travelers—the Policy at issue here—promises to pay for any "direct physical loss of or damage to Covered Property caused by or resulting from a Covered Cause of Loss."[19] It also agrees to pay for the "actual loss of Business Income" and the "actual Extra Expense" incurred during the "Period of

---

[12] ECF No. 43-5 ¶ 6.
[13] *Id.* ¶ 7.
[14] *Id.*
[15] *Id.* ¶ 8.
[16] *Id.*
[17] *Id.*
[18] *Id.* ¶¶ 8-9.
[19] ECF No. 39-2 at 25.

Restoration[.]"[20] The "Period of Restoration" is calculated as the period of time between (a) the time of loss plus any deductible period—here, September 5, 2021— and (b) the earlier of the date the Property "should be repaired, rebuilt or replaced with reasonable speed and similar quality" or "when business is resumed at a new permanent location."[21] "Business Income" is calculated as the sum of net income (net profit or loss before taxes) plus continuing normal operating expenses.[22]

The Policy also covers "Business Income" losses for a time *after* the "Period of Restoration" ends—that is, after the policyholder has "repaired, rebuilt or replaced with reasonable speed and similar quality" its damaged property or "resumed [business] at a new permanent location."[23] This coverage is known as Extended Business Income coverage ("EBI"). The EBI provision of Inland's Policy with Travelers provides:

**(1) Business Income Other Than "Rental Value"**

If the necessary "suspension" of your "operations" produces a Business Income loss payable under this Coverage Part, we will pay for the actual loss of Business Income you incur during the period that:

> **(a)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

> **(b)** Ends on the earlier of:

> > **(i)** The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

---

[20] *Id.* at 63.
[21] *Id.* at 74.
[22] *Id.* at 63.
[23] *Id.* at 74.

> **(ii)** 180 consecutive days after the date determined in **(1)(a)** above . . .
>
> However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.
>
> Loss of Business Income must be caused by direct physical loss of or damage to property at the described premises caused by or resulting from a Covered Cause of Loss.[24]

Additionally, "Operations" is defined as:

> Your business activities occurring at the described premises even if such activities would not have produced income during the 'period of restoration,' such as research and development activities[.][25]

## C. Travelers Denies Inland's Extended Business Income Claim and the Parties Dispute the Timing and Reimbursement Amounts of Certain of Inland's Other Claims

After sustaining damage to the Perdido Property from Hurricane Ida in August 2021, Inland notified Travelers of its claim for damage to the Perdido Property and potential Business Income loss.[26] The parties were ultimately successful in agreeing on the amount of Inland's claim for physical damage to the Perdido Property. Travelers paid Inland $530,993.97 for the physical damage to the property.[27]

The parties disagreed, however, regarding the extent and timing of Inland's Business Income and Extra Expense claim. Travelers asserts that over the course of its adjustment of the claim, it has paid Inland $1,355,717.40 for loss of Business Income and Extra Expense under the Policy.[28] Inland disputes this figure and the

---

[24] *Id.* at 65.
[25] *Id.* at 74.
[26] ECF No. 43-9.
[27] ECF No. 43-1 ¶ 13.
[28] *Id.*

timing of certain of the payments.[29] On June 16, 2023, Inland filed suit for (1) breach of contract and (2) bad faith under La. Rev. Stat. §§ 22:1973 and 1892.[30]

Several months after filing its Complaint, Inland sought payment for its EBI losses to cover the 180 days after it had moved into the new, permanent Brookhollow Property.[31] In an October 26, 2023 correspondence to Travelers, Inland stated that it had "replaced its damaged property by and resumed operations on January 15, 2023. But its business interruption losses continued 180 days after that, up to and through July 14, 2023."[32]

Travelers rejected Inland's request for EBI coverage. According to Travelers' February 16, 2024 response letter, Inland could not show that its "ability to warehouse and distribute seafood and other goods" was diminished at the new property.[33]

The parties now bring cross-motions for partial summary judgment on the issue of Travelers' alleged breach of contract for failure to provide EBI coverage under the Policy.[34] Travelers contends that Inland is not entitled to EBI coverage under the Policy because Inland had the physical ability and capability to generate its pre-hurricane level of Business Income as of January 15, 2023—*i.e.*, the day it moved into its permanent Brookhollow Property. Inland argues that the Policy covers its losses in Business Income after moving into the Brookhollow Property because its slowdown

---

[29] *Id.*
[30] ECF No. 1 ¶¶ 13-19.
[31] ECF No. 43-1 ¶ 28.
[32] ECF No. 35-3 at 1.
[33] ECF No. 35-6 at 2.
[34] ECF Nos. 35, 39.

in customer orders was caused by Hurricane Ida after customers switched to other distributors due to product quality issues at the temporary properties. For the reasons given below, the Court denies each motion.

Travelers also brings a motion for summary judgment on Inland's bad faith claims.[35] Travelers argues that it acted in good faith while resolving Inland's claims. Travelers contends that it consistently communicated with Inland and that any disagreement is a question of Policy interpretation, not bad faith. Inland asserts that Travelers acted unreasonably in its coverage determinations and that its payments were late. Inland argues that any dispute is a factual question for the jury. For the reasons given below, the Court grants in part and denies in part the motion.

## II.   LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In reviewing the record, 'the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.'" *Vote.Org v. Callanen*, 89 F.4th 459, 469 (5th Cir. 2023) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). The Court "'resolve[s] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of

---

[35] ECF No. 36.

7

contradictory facts.'" *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If, however, the nonmovant bears the burden of proof at trial on the dispositive issue, "'the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.'" *In re La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017) (quoting *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994)). "'If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate.'" *Guillot ex rel T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023) (quoting *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012)).

**B. Louisiana Insurance Claims**

This dispute was filed in this Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332.[36] "A federal court sitting in diversity applies the substantive law of the forum state, in this case Louisiana." *Wiszna Co. v. Gen. Star Indem. Co.*, 759 F.3d 446, 448 (5th Cir. 2014). Under Louisiana law, in a dispute over the interpretation of an insurance policy issued in the state, Louisiana substantive law controls. *See Lamar Advert. Co. v. Cont'l Cas. Co.*, 396 F.3d 654, 659 (5th Cir. 2005).

In Louisiana, "[a]n insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code." *Bonin v. Westport Ins. Corp.*, 2005-0886 (La. 5/17/06), 930 So. 2d 906, 910. The policy "'should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion.'" *Carrier v. Reliance Ins. Co.*, 1999-2573 (La. 4/11/00), 759 So. 2d 37, 43 (citation omitted). Courts are "reluctant to grant summary judgment denying coverage 'unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded.'" *Crumedy v. XYZ Ins. Co.*, 2023 WL 7411282, at *2 (E.D. La. Nov. 9, 2023) (quoting *Cosey v. Flight Acad. of New Orleans, LLC*, 2019-0757 (La. App. 4 Cir. 5/13/20), 364 So. 3d 226, 231); *see also Arctic Slope Regional Corp. v. Affiliated FM Ins. Co.*, 564 F.3d 707, 709-10 (5th Cir. 2009) (ambiguities in insurance contracts are "to be

---

[36] ECF No. 1 ¶ 3.

construed against the insurer and in favor of coverage") (quoting *Sher v. Lafayette Ins. Co.*, 2007-2441 (La. 4/8/08), 988 So. 2d 186, 193).

### III.  ANALYSIS

### A. Extended Business Income Claim

Both parties move for summary judgment on the issue of Travelers' alleged breach of insurance contract for failure to pay Extended Business Income loss benefits.

Travelers argues that Inland is foreclosed from entitlement to EBI coverage under the Policy's "unambiguous" language.[37] According to Travelers, the day Inland moved into its new Brookhollow Property—which was the same size and capacity as its original facility—Inland physically "could restore" its "'business activities" to the level that would generate its pre-hurricane Business Income. In other words, under Travelers' reading of the Policy, the word "could" only involves "consideration of Inland's ability, or capability, at the new location," and does not guarantee a "continued customer base" or "customer loyalty."[38] Therefore, argues Travelers, Inland is not eligible for EBI coverage because it had the physical capability to generate its previous level of Business Income from its first day at the new facility. Inland's other reasons for experiencing decreased Business Income, such as fewer customer orders, are not covered.[39]

---

[37] ECF No. 35-1 at 6.
[38] ECF No. 47-2 at 5.
[39] ECF No. 35-1 at 12-13.

Inland argues that Travelers' reading of the Policy would render it meaningless. Inland points out that under Travelers' reading, EBI coverage would begin and end on the same day—*i.e.*, the day the policyholder moved into a new, permanent facility and began operations.[40] Inland contends that the Policy covers Business Income losses resulting from decreased customer orders caused by Hurricane Ida's damage to its original property. In other words, according to Inland, but for the damage to the Perdido Property, Inland would not have been forced to work out of inferior, temporary facilities with "insufficient refrigeration," its customers would not have been "dissatisfied," and those customers would not have "turned to other vendors to meet their needs."[41] Therefore, argues Inland, the Policy must cover the losses at the new facility that stem from customers "not resum[ing] the same level of orders of [its] products as they had before [Hurricane] Ida," because those losses ultimately relate back to the hurricane's damage to the original Perdido Property.[42]

Inland has the better reading of the Policy. Recall that under the Policy, EBI coverage:

> **(a)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations"[43] are resumed; and
>
> **(b)** Ends on the earlier of:
>
>> **(i)** The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income

---

[40] ECF No. 42 at 16-17.

[41] *Id.* at 13.

[42] *Id.* at 16-17, 19.

[43] "Operations" means "[y]our business activities occurring at the described premises even if such activities would not have produced income during the 'period of restoration,' such as research and development activities[.]" ECF No. 39-2 at 74.

11

amount that would have existed if no direct physical loss or damage had occurred; or

**(ii)** 180 consecutive days after the date determined in **(1)(a)** above . . . [44]

Recall, too, that EBI coverage

does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the areas where the described premises are located[,][45]

and

[l]oss of Business Income must be caused by direct physical loss of or damage to property at the described premises caused by or resulting from a Covered Cause of Loss.[46]

Travelers' reading of the Policy would render EBI coverage all but meaningless.[47] EBI coverage "[b]egins on the date property . . . is actually repaired, rebuilt or replaced and 'operations' are resumed[.]"[48] Put differently, the onset of the EBI coverage period is triggered only after the insured's property has been actually repaired or replaced with a property of like kind and quality. Travelers agrees that EBI coverage began the day Inland moved into its new, permanent Brookhollow location, which was of similar size and capability as its original Perdido Property.[49] But under Travelers' reading of the Policy, EBI coverage would terminate on the same day it started *because* Inland had moved into a permanent location of a similar size

---

[44] *Id.* at 65.

[45] *Id.*

[46] *Id.*

[47] At best, Travelers' argument highlights an ambiguity in the Policy's language. But to the extent that ambiguous terms appear in an insurance contract, they "are to be construed liberally in favor of a person claiming coverage." *Westerfield v. LaFleur,* 493 So.2d 600, 602-03 (La. 1986); *see also* La. Civ. Code art. 2056 ("In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party.").

[48] ECF No. 39-2 at 65.

[49] ECF No. 41 at 7.

and capability as its original property, and thus, according to Travelers, Inland had restored "operations" sufficient to generate Business Income as if no direct physical loss or damage had occurred to the original property.[50]

This reading of the Policy would render an insured's purchase of EBI coverage superfluous. That interpretation cannot stand under Louisiana law. *See Naquin v. Elevating Boats, L.L.C.*, 817 F.3d 235, 239 (5th Cir. 2016) (citing La. Civ. Code art. 2049) ("A contractual 'provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective,' so as to avoid rendering any provision in the contract superfluous."). It would also undermine the purpose of EBI coverage, which exists "to support the business until it can regain the customers and level of business income that existed before the loss." Daniel T. Torpey, et al., The Business Interruption Book: Coverage, Claims, and Recovery, at 36 (2004). EBI coverage is distinct from the coverage Inland received before it moved into the Brookhollow Property (during the "period of restoration") because EBI compensates for the "additional loss of business income that continues past the time that the damaged property is repaired and operations resumed." *Id.*; *see also Island Concepts, LLC v. Certain Underwriters at Lloyd's, London*, 2014 WL 5524379, at *8 (E.D. La. Oct. 31, 2014) ("[T]he purpose behind business interruption insurance . . . is to 'protect the earnings which the insured would have enjoyed had no interruption or suspension occurred.'" (citation omitted)).

---

[50] As Travelers explains, "In this case, ***those [start and end] dates are the same*** – on the day that Inland began operations at the Brookhollow Location it could have restored its operations, its business activities, to the level which would generate the Business Income amount that would have existed in the absence of Hurricane Ida." *Id.* at 6-7 (emphasis in original).

In *Berwick v. Hartford Fire Insurance Company*, another district court considered and rejected a similar argument by the insurer-defendant. 2012 WL 3843323 (D. Colo. Sept. 4, 2012). In that case, a dental practice damaged in a fire sought EBI coverage from its insurer under a policy with near-identical language as here. *Id.* at *1-2. The plaintiffs sought coverage for the time-period after they had repaired and reopened their facility but before customers had returned at pre-loss rates. *Id.* The insurer-defendant argued the plaintiffs did not qualify for EBI coverage. *Id.* at *3. According to the insurer-defendant, once the plaintiffs reopened the facility, their "operations were fully functional, and the same volume and nature of work could be physically performed on that date as before the fire," and the fact that there were fewer customers after the re-opening date was a "market force[]" damage not covered by the policy. *Id.* at *3. The court rejected that argument and concluded that physically "[r]estoring the Premises and restoring operations have to be interpreted differently" for the EBI policy to have any meaning. *Id.* at *5. The court accordingly denied the insurer-defendant's summary judgment motion. *Id.*

So too here. Inland's restoration of its facility to one of similar size and quality cannot mark both the beginning and end of its EBI coverage. That reading would ignore that EBI coverage begins when operations are "resumed"—but ends when operations are "*restored*."[51] This means that the end of EBI coverage is marked by the restoration of operations, not the restoration of the physical property. In other words, "[r]estoring the Premises and restoring operations have to be interpreted

---

[51] *Id.* at 65 (emphasis added).

differently" for the EBI policy to have any meaning. *Berwick*, 2012 WL 3843323, at *5.

Though Travelers offers two examples of potential scenarios in which EBI coverage would theoretically apply under its reading of the Policy, neither persuades. Travelers contends that Inland would qualify for EBI coverage during any time lag between moving into its permanent facility and "hir[ing] a sufficient workforce" in a hypothetical world in which Inland had "lost all of its employees" in the "tumultuous efforts to keep the business running after the storm."[52] Travelers further asserts that its interpretation of EBI coverage would apply during any time lag between Inland moving into the permanent facility and Inland completing the "test[ing] or commission[ing]" of any required "machinery or equipment."[53] But each of these examples ignores that EBI coverage *begins* when the property "is actually repaired, rebuilt or replaced *and* 'operations' are resumed[.]"[54] Travelers does not explain how Inland's operations would have "resumed" under the Policy—and EBI coverage would have begun—if Inland were still lacking the employees or critical equipment necessary to functionally resume those operations. Travelers' reading of the Policy is therefore rejected. *See also Am. Guarantee & Liab. Ins. Co. v. S. Minnesota Beet Sugar Co-op.*, 320 F. Supp. 2d 879, 883 (D. Minn. 2004) (rejecting reading of policy

---

[52] ECF No. 41 at 9.
[53] *Id.*
[54] ECF No. 39-2 at 65 (emphasis added).

that would "render the extended business income coverage redundant"). The Court accordingly denies Travelers' motion[55] for summary judgment.[56]

The Court instead agrees with Inland's reading of EBI coverage—*i.e.*, that the Policy covers Business Income losses that stem from decreased orders due to customers switching distributors after experiencing quality issues while Inland was working out of temporary locations. Though it is true that the EBI Policy only covers Business Income losses "caused by direct physical loss of or damage to property at the described premises," EBI coverage also *begins* on "the date property . . . is actually repaired, rebuilt or replaced and 'operations' are resumed."[57] For EBI coverage to have any meaning, losses that are "caused by direct physical loss of or damage to the [original] property" must include downstream losses of that original physical damage. Otherwise, it would be impossible for any Business Income losses to still be occurring at the new permanent location after operations had resumed. *See Shaw Mortg. Corp. v. Peerless Ins. Co.*, 615 F. Supp. 2d 1172, 1177 (S.D. Cal. 2009) ("[T]he purpose of the Extended Business Income coverage is to provide a cushion for the time after the 'Period of Restoration' when the insured is back in business but still not doing business at the same volume as before.") These covered losses therefore include

---

[55] ECF No. 35.

[56] Travelers further argues that even if Inland's interpretation of the Policy's EBI provision is correct, Inland lacks sufficient evidence to carry its burden at trial that it lost customers due to the consequences of Hurricane Ida. According to Travelers, Inland has failed to "produce[] any evidence or documentation demonstrating why it lost customers between Ida and July 14, 2023." ECF No. 35-1 at 11 (emphasis in original). The Court disagrees. Inland has submitted evidence into the record supporting its contention that its EBI losses were caused by its property damage. *See, e.g.*, ECF Nos. 42-2 ¶ 9; 42-4 at 107:1-25; *see also Citadel Broad. Corp. v. Axis U.S. Ins. Co.*, 2014-0326 (La. App. 4 Cir. 2/11/15), 162 So. 3d 470, 475 ("customer-by-customer proof" of business interruption losses is unnecessary; business interruption losses need only be proved with "reasonable certainty").

[57] ECF No. 39-2 at 65.

decreased customer orders after customers switched distributors due to quality issues caused by the temporary locations.

Beyond championing its reading of the Policy alone, however, Inland also urges the Court to grant summary judgment on its entitlement to EBI coverage. Inland points to evidence in the record that it experienced decreased Business Income after opening its Brookhollow Property due to its loss of customers stemming from the aforementioned quality issues.[58] Inland argues there is no genuine dispute that it is eligible for EBI coverage and urges the Court to grant summary judgment on that issue.

The Court disagrees. Inland's argument ignores certain of the Policy's language and erroneously assumes the factual conclusion that Inland's slower customer orders were necessarily due to issues relating to the hurricane. Under Louisiana law, when determining whether a policy affords coverage for an incident, it is the burden of the insured to prove the incident falls within the policy's terms. *See, e.g., Cent. Crude, Inc. v. Liberty Mut. Ins. Co.*, 51 F.4th 648, 653 (5th Cir. 2022); *Courtenay, Hunter & Fontana, LLP v. Massachusetts Bay Ins. Co.*, 2008 WL 3876421, at *4 (E.D. La. Aug. 19, 2008) ("The motion is likewise denied as to extended business income coverage because Plaintiff must first establish at trial that coverage under

---

[58] *See, e.g.* ECF Nos. 42-2 ¶ 9 (Comeaux Decl.) ("In summary, because of the damage caused to Inland's Perdido Location, customers reduced and/or eliminated orders for certain products after Inland had been unable to meet certain customer needs while Inland was operating out of temporary locations from September 2021 to January 2023[.]"); 42-4 at 107:19-21 (Jones Depo.) ("The refrigeration was—it killed us. It really did. The non-refrigeration hurt us so bad.")

the business income section of the policy applies."). It is therefore Inland's burden to show that it is entitled to EBI coverage in the first instance.

Inland fails to do so. As explained, to qualify for EBI coverage, Inland's loss of Business Income "must be caused by direct physical loss of or damage to property at the described premises[.]"[59] Inland provides evidence that it experienced Business Income losses after opening its new facility due to the loss of customers stemming from quality issues during its time in temporary locations.[60] Travelers, however, provides conflicting evidence that Inland lost customers for reasons unrelated to Hurricane Ida's damage, including a lawsuit over unpaid bills with one of its largest customers and "pricing issues" with other customers.[61] Based on the parties' submissions, therefore, there is a factual dispute as to whether Inland's Business Income losses at its Brookhollow Property were caused by the "direct physical loss of or damage to property" at its original Perdido Property or by issues not covered by the Policy. These are factual questions to be determined by the jury. *See, e.g.*, *Berwick*, 2012 WL 3843323, at \*4 (holding that whether any "diminution in operations" was

---

[59] ECF No. 39-2 at 65.

[60] *See, e.g.* ECF Nos. 42-2 ¶ 9 (Comeaux Decl.) ("In summary, because of the damage caused to Inland's Perdido Location, customers reduced and/or eliminated orders for certain products after Inland had been unable to meet certain customer needs while Inland was operating out of temporary locations from September 2021 to January 2023[.]"); 42-4 at 107:19-21 (Jones Depo.) ("The refrigeration was—it killed us. It really did. The non-refrigeration hurt us so bad.") Inland also points to Travelers' financial expert, who calculated potential EBI reimbursement amounts for Inland under various scenarios. ECF No. 39-1 at 7 (citing ECF No. 39-5 at 6-9). According to Inland, these calculations mean that Travelers' expert "recognized that Inland had at least *some* business income losses during the extended period of indemnity." *Id.* But the expert testified that her calculations only applied "*[i]f* the extended period is covered [by the Policy]." ECF No. 47-5 at 111:9-10 (Rusnak Depo.) (emphasis added). The expert's calculations are therefore insufficient evidence on which to grant summary judgment to Inland on the issue of coverage.

[61] ECF Nos. 35-1 at 12 (citing *Inland Fresh Seafood Corporation of America, Inc. v. Rouse's Enterprises, LLC*, No. 2:24-cv-00044-DJP-DPC (E.D. La.)); 41-2 at 31:7-232:2.

"'caused by or resulting from' the fire" as required under the EBI Policy was a question of fact for the jury).[62]

Though the Court agrees with Inland's interpretation of the Policy, Inland has failed to carry its summary judgment burden on entitlement to EBI coverage due to the remaining factual disputes.[63]

### B. Bad Faith Claims

Travelers also submits a second motion[64] for summary judgment seeking dismissal of Inland's second cause of action alleging Title 22 bad faith pursuant to La. R.S. §§ 22:1973 and 1892.

An insurer is susceptible to penalties under La. R.S. §§ 22:1973 and 1892 for breaching its duty of good faith owed to its policyholder when: (1) the insurer has received satisfactory proof of loss; (2) the insurer fails to pay the undisputed amount owed within the statutorily prescribed time (30 or 60 days) of receiving satisfactory proof of loss; and (3) that failure to pay is arbitrary, capricious or without probable

---

[62] Travelers' belated invocation of the "loss of market" *exclusion* to EBI coverage is barred as a matter of law because Travelers did not reference that exclusion in its Answer. ECF No. 8 at 6. Boilerplate invocations of all "conditions, limitations, or exclusions" are insufficient, as they do not put the plaintiff on fair notice of the issues for trial. *Aunt Sally's Praline Shop, Inc. v. United Fire & Cas. Co.*, 418 F. App'x 327, 330-31 (5th Cir. 2011) ("loss of market" exclusion must be specifically pled as litigating it is a "highly fact intensive exercise" dependent on "factual development, on consultation with experts, and on the opportunity to test the scope of the legal applicability of the exclusion through dispositive motions").

[63] Assuming the jury finds that Inland is entitled to EBI coverage, it will also need to decide the day Inland's EBI coverage expired—*i.e.*, the day that Inland, using "reasonable speed," "could" restore its operations to generate pre-hurricane levels of Business Income. That day may well be different from the day Inland actually *did* restore its operations to generate pre-hurricane levels of Business Income. *See Berwick*, 2012 WL 3843323, at *3 (holding that whether plaintiffs had used "reasonable speed" such that they "could have restored normal operations" sooner by, for example "sending out flyers, making phone calls, engaging in advertising, and otherwise letting the world know that they were back in business in the weeks or days leading up to the re-opening" was a question for the jury).

[64] ECF No. 36.

cause. *Lacoste Aviation, LLC v. StarStone Nat'l Ins. Co.*, 719 F. Supp. 3d 502, 511-12 (E.D. La. 2024). "The purpose of these penalty statutes is to 'provide remedies to insureds whose insurance claims are improperly handled or to whom payment is unreasonably delayed.'" *Bourg v. Safeway Ins. Co. of Louisiana*, 2019-0270 (La. App. 1 Cir. 3/5/20), 300 So. 3d 881, 888 (citation omitted).

Satisfactory proof of loss is proof that is "sufficient to fully apprise the insurer of the insured's claims." *Louisiana Bag Co. v. Audubon Indem. Co.*, 2008-0453 (La. 12/2/08), 999 So. 2d 1104, 1119 (citation omitted); *Katie Realty, Ltd. v. Louisiana Citizens Prop. Ins. Corp.*, 2012-0588 (La. 10/16/12), 100 So. 3d 324, 331 ("[P]roof of loss necessarily means proof sufficient to establish the amount due on an insurance claim."). "[P]roof of loss 'is a flexible requirement to advise an insurer of the facts of the claim, and [] need not 'be in any formal style.'" *First Baptist Church of Iowa, Louisiana v. Church Mut. Ins. Co., S.I.*, 105 F.4th 775, 794 (5th Cir. 2024) (quoting *La. Bag Co., Inc. v. Audubon Indem. Co.*, 2008-0453 (La. 12/2/08), 999 So. 2d 1104, 1119)). "[A]rbitrary, capricious, or without probable cause" means "vexatious," and indicates a refusal to pay that is "unjustified" and "not based on a good-faith defense." *Reed v. State Farm Mut. Auto. Ins. Co.*, 2003-0107 (La. 10/21/03), 857 So. 2d 1012, 1021 (citation omitted). The analysis "depends on the facts known to the insurer at the time of its action." *Id.*

Inland's allegations of bad faith center on four particular actions by Travelers: (1) Travelers' failure to pay a portion of Inland's claim for Business Income loss (the "BI Claim"); (2) Travelers' calculation of the "Period of Restoration" for the BI Claim;

(3) Travelers' failure to timely pay a portion of Inland's claimed Extra Expenses (the "EE Claim"); and (4) Travelers' determination that Inland was ineligible for Extended Business Income Loss coverage (the "EBI Claim").[65] The Court considers each action in turn.

### i. Business Income Claim

Inland asserts bad faith in Travelers' 20-day delay past La. R.S. § 22:1892(B)(1)'s 30-day deadline to pay Inland's Business Income claim.[66] The parties agree on the following chronology of events relating to this claim. On May 3, 2022, Travelers received financial documents concerning Inland's BI losses through March 2022 from Inland.[67] On June 7, 2022, Travelers informed Inland that it calculated the undisputed amount owed to Inland as $131,812.00.[68] On June 13, 2022, Inland informed Travelers that it would like to receive the undisputed payment.[69] And on June 21, 2022, Travelers paid the undisputed amount to Inland.[70]

"To avoid penalties under § 22:1892, the insurer must pay 'any undisputed amount over which reasonable minds could not differ' within the statutorily mandated time period." *First Baptist Church of Iowa, Louisiana*, 105 F.4th at 795 (citation omitted). Travelers presents evidence that it did not calculate the undisputed $131,812.00 owed to Inland within the 30-day deadline due to delays and

---

[65] ECF No. 36-1 at 2; *see generally* ECF No. 43.
[66] ECF No. 43 at 13-14.
[67] ECF No. 43-1 ¶ 17.
[68] *Id.* ¶ 19.
[69] *Id.* ¶ 20.
[70] *Id.* ¶ 21.

errors by its accountant.[71] In other words, Travelers admits that it had received "enough information" to calculate the undisputed amount owed to Inland as of May 3, 2022. *Austin v. Parker*, 672 F.2d 508, 520 (5th Cir. 1982). Even if the accountant's errors were a viable excuse for its delay in calculating the undisputed amount, Travelers offers no explanation for its delay in tendering the $131,812.00 to Inland once confirmed.[72] Travelers' delay is a facial, per se violation of the statute. *See id.* ("'[T]he failure to pay an undisputed amount is a per se violation of the statute." (citation omitted)). The Court accordingly denies Travelers' motion for summary judgment dismissing Inland's Business Income bad faith claim.

### ii. *Length of the Period of Restoration*

The parties next dispute the appropriate "Period of Restoration" for Inland's Business Income claim. Recall that under the Policy Travelers must pay the "actual loss of Business Income [the insured] sustains" and the "actual Extra Expense" incurred during the "Period of Restoration."[73] Inland argues that Travelers' determination that the Period of Restoration was only 13 months—rather than 17 months—amounts to bad faith.[74]

Under the Policy, the Period of Restoration runs from the date of the loss (after applying any waiting period deductible).[75] The Period ends on the earlier of "(a) The date when the property at the described premises should be repaired, rebuilt, or

---

[71] *Id.* ¶¶ 17-21.
[72] *See id.*
[73] ECF No. 39-2 at 63.
[74] ECF No. 43 at 17.
[75] ECF No. 39-2 at 74.

replaced with reasonable speed and similar quality; or (b) The date when business is resumed at a new permanent location."[76] The parties agree that the period of restoration began on September 5, 2021. But the parties disagree on the end date.

Travelers' expert—citing the Policy's language that the end date is the "earlier of" the date when the property "*should be* repaired, rebuilt, or replaced with reasonable speed"—calculated the end date to be October 1, 2022.[77] In other words, according to Travelers' expert, Inland theoretically *could have* repaired its original facility and resumed operations at the original property in 13 months. Travelers concluded that Inland's Business Income claim was therefore limited to a "Period of Restoration" between September 5, 2021 and October 1, 2022.[78]

Inland's experts, on the other hand, calculate the end date as January 2023— that is, the date Inland *did* "resume[]" "business" at a "new permanent location," its Brookhollow Property.[79]  Inland asserts that Travelers' expert is an "unqualified," "out-of-state, unlicensed," consultant who is "unfamiliar with local permitting or the devastation New Orleans was facing" following Hurricane Ida.[80] Inland argues that Travelers "concocted a pretext to avoid payment for the full period" by hiring the unqualified expert "to posit a facially unreasonable 13-month timeline for restoration of the original damaged property," thereby demonstrating bad faith.[81]

---

[76] *Id.*
[77] ECF No. 36-1 at 17-18 (emphasis added).
[78] *Id.*
[79] ECF No. 43 at 16-17.
[80] *Id.* at 1, 7.
[81] *Id.* at 16-17.

The Court disagrees. The parties' dispute regarding the correct length of the Period of Restoration is based on competing expert reports. Both parties relied on the work and opinions of experts familiar with the construction industry to estimate the length of time that it would have taken to repair the Perdido Property following Hurricane Ida. Though Inland now asserts that Travelers' expert is wholly unqualified, Inland worked with that expert to successfully resolve Inland's claim for building damage to the Perdido Property.[82] Moreover, two of the expert reports Inland now cites as evidence that Travelers' expert's timeline was "facially flaw[ed]" were not provided until December 2024 in connection with Inland's expert disclosures in this litigation.[83] In other words, during the adjustment of the claim, the parties each retained one expert to assess the theoretical length of the Period of Restoration, and each party relied on that expert. A legitimate dispute between experts does not support a bad faith claim. *See, e.g.*, *2715 Marietta, LLC v. Axis Surplus Ins. Co.,* 2023 WL 8773747, at *5 (E.D. La. Dec. 19, 2023), *reconsideration denied*, 2024 WL 493300 (E.D. La. Feb. 8, 2024) (holding that defendant insurance carrier did not act in bad faith because it relied on the conclusions of its retained expert and because there was "a legitimate dispute among the experts as to the cause of the loss"); *Gentilly, LLC v. State Farm Fire & Cas. Co.*, 2024 WL 5246606, at *6 (E.D. La. Dec. 30, 2024) (holding that payout of damage amount "does not indicate arbitrary or capricious behavior" where "Defendant's actions were consistently in line with its expert appraisals"). The

---

[82] ECF No. 43-1 ¶ 22.
[83] ECF Nos. 43-17; 43-18.

Court accordingly grants summary judgment to Travelers as to the length of the Period of Restoration and dismisses Inland's bad faith claim on this issue.

### iii. Extra Expense Claim

Inland next asserts that the time it took for Travelers to reimburse Inland for its extra expenses after Travelers received invoices showing those expenses amounts to bad faith. Under the Policy Travelers must pay the "actual loss of Business Income [the insured] sustains" and the "actual Extra Expense" incurred during the "Period of Restoration."[84] "Extra Expense" means the "reasonable and necessary expenses . . . that you incur during the 'Period of Restoration' and that you would not have incurred if there had been no [covered] direct physical loss of or damage to property."[85]

The parties agree on the following key dates of the timeline for the Extra Expense claim. On March 10, 2022, Inland submitted to Travelers an accounting of its extra expenses with invoices.[86] In that email, Inland informed Travelers that the "enclosed bills and recap for extra expenses" were "not included in [its] financial results."[87] On December 15, 2022, Inland "requested adjustment based on the invoicing previously provided."[88] On February 2, 2023, Travelers' adjuster emailed Inland to ask about several of the amounts claimed.[89] And on May 1, 2023, Travelers

---

[84] ECF No. 39-2 at 63.

[85] *Id.*

[86] ECF No. 43-6 (March 10, 2022 Eric Sussman transmission of Inland's receipts for extra expenses to Travelers).

[87] *Id.*

[88] ECF No. 43-9 (Claims Notes Travelers_7374).

[89] ECF No. 43-20 (Travelers Email to Inland Inland_6412-6414).

paid $174,265.04 to Inland in connection with extra expenses alleged to have been incurred but not included in Inland's profit & loss statements.[90]

Inland argues that its March 2022 email to Travelers "made clear" that the submitted expenses were "not included in [its] financial results" and thus were eligible for Extra Expense coverage.[91] According to Inland, Travelers' "decision to wait more than a year after receiving Inland's submitted extra expenses" was made in bad faith.[92]

The Court disagrees. "To avoid penalties under § 22:1892, the insurer must pay 'any undisputed amount over which reasonable minds could not differ' within the statutorily mandated time period.'" *First Baptist Church*, 105 F.4th at 795 (citation omitted). Inland's assertion in its email to Travelers that the claimed extra expenses were "not included in [its] financial results" is insufficient to conclude that Travelers had "enough information" to calculate the undisputed amount. *Austin*, 672 F.2d at 520. Travelers cites evidence that it engaged with Inland about its claim "throughout 2022," including determining "whether certain of the extra expenses claimed by Inland were covered, whether they were covered under any other insurance, whether they were also considered within the business income calculation, or if they overlapped with direct damage repair costs made at an alternate location."[93] Travelers also cites evidence that it was continuing to engage in a back-and-forth with Inland about revisions and calculations to its extra expenses claim through April

---

[90] ECF No. 43-9 (Claims Notes Travelers_7360).
[91] ECF No. 43 at 15.
[92] *Id.* at 16.
[93] ECF No. 36-2 ¶ 36 (citing ECF No. 36-4 (Lederman Decl. ¶ 25)).

2023.[94] Though Inland points to the fact Travelers' internal accountant ultimately only identified one line item that was potentially duplicated with prior business interruption calculations, this does not in itself demonstrate that Travelers' process was flawed or intentionally delayed.[95]

As the nonmoving party that will bear the burden of proof at trial, Inland must point to specific facts showing that a genuine issue exists to defeat a summary judgment motion. *Celotex*, 477 U.S. at 324-25. Here, Inland does not provide any facts indicating that Travelers' conduct was arbitrary or capricious. This is insufficient to defeat a motion for summary judgment. *See Gates v. Auto Club Family Ins. Co.,* 2007 WL 1464259, at *4 (E.D. La. May 17, 2007) (granting summary judgment to insurer because the plaintiffs failed to provide any facts indicating that the insurer's conduct was arbitrary and capricious); *DeFranceschi, M.D, L.L.C. v. Employers Mut. Cas. Co.*, 2008 WL 1930450, at *4 (E.D. La. Apr. 30, 2008) (same). The Court accordingly grants Travelers' motion for summary judgment on the extra expense bad faith claim.

### iv.  *Extended Business Income Claim*

Finally, Inland contends that Travelers has acted in bad faith because it failed to pay Inland for any of its claimed Extended Business Income losses. As discussed *supra*, Travelers asserts that it declined to pay Inland's EBI Claim because under Travelers' reading of the Policy, Inland's decreased business income after it moved into its new, permanent facility is not covered given Inland had the physical

---

[94] ECF No. 36-1 at 24 (citing ECF No. 36-2 at ¶¶ 37-42).
[95] ECF No. 43 at 14-15.

"capability" of generating the same level of income as pre-hurricane.[96] Inland argues that Travelers' reading of the Policy's EBI coverage has "no reasonable basis" and consequently is "textbook bad faith."[97]

"'An insurer does not act arbitrarily and capriciously . . . when it withholds payment based on a genuine (good faith) dispute about the amount of a loss or the applicability of coverage.'" *Monk v. Allstate Ins. Co.*, 2012 WL 2133639, at *3 (E.D. La. June 12, 2012) (quoting *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 297-98 (5th Cir. 2009)). But if an insurance company's interpretation is "unreasonable" or without "probable cause," it may be exposed to bad faith penalties. *Calogero v. Safeway Ins. Co. of Louisiana*, 1999-1625 (La. 1/19/00), 753 So. 2d 170, 173.

The Court agrees with Inland that a reasonable factfinder could find that Travelers' interpretation of the Policy was unreasonable. Travelers' interpretation of its EBI Policy—that coverage ended the same day it began when Inland moved into its new facility and restarted operations—rendered it functionally meaningless. Inland presents evidence that Travelers could not recall the last time it applied Extended Business Income coverage in this way.[98] Nor could Travelers point to any publication or document directing adjusters to apply it in this way.[99] And Travelers' internal guidance advises its underwriters to calculate the expected amount of extended business interruption coverage by inputting the "number of months [the

---

[96] ECF No. 36-1 at 19-22.
[97] ECF No. 43 at 23.
[98] ECF No. 43-24 at 68:9-16 (30(b)(6) Lederman Depo.).
[99] *Id.* at 69:8-14.

insured] anticipate[s] reduced income after resuming *normal* operations."[100] It is for the factfinder to decide if Travelers' conduct in interpreting its EBI Coverage was arbitrary and capricious here. *See Clement v. Sontheimer Offshore Catering Co.,* 577 So. 2d 1083, 1088 (La. Ct. App. 1991) (affirming award of penalties where "Underwriters erroneously chose to interpret its policy as not providing coverage for the plaintiff's claim in this case."). The Court accordingly denies Travelers' motion for summary judgment on the EBI bad faith claim.

## IV. CONCLUSION

**IT IS ORDERED** that Inland and Travelers' cross-motions[101] for partial summary judgment on Inland's Extended Business Income claim are **DENIED.**

**IT IS FURTHER ORDERED** that Travelers' motion[102] for summary judgment seeking dismissal of Inland's second cause of action alleging Title 22 bad faith pursuant to La. Rev. Stat. §§ 22:1973 and 1892 is **GRANTED in part and DENIED in part.**

New Orleans, Louisiana, this 22nd day of September, 2025.

BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

[100] ECF No. 43-3 (emphasis added).
[101] ECF Nos. 35 and 39.
[102] ECF No. 36.